W. T. Treadway, Appellant, v. Terminal Railroad Association of St. Louis, Respondent.—136 S. W. (2d) 401.

St. Louis Court of Appeals.   Opinion filed February 6, 1940.

*T. M. Pierce, J. L. Howell, Wm. A. Thie* and *Walter N. Davis* for respondent.

*Buder & Buder, G. A. Buder, Jr.* and *Frederick A. Judell* for plaintiff-appellant.

BECKER, J.—This is a second appeal, the prior opinion being reported in 231 Mo. App. 1028, 84 S. W. (2d) 143.

Plaintiff's petition seeks to recover judgment for $849 against defendant Terminal Railroad Association of St. Louis, hereinafter referred to as the Terminal, as the value of certain baggage which had been transported by the Missouri, Kansas & Texas Railroad Company from Houston, Texas, to St. Louis, Missouri, where, upon its arrival, the said Missouri, Kansas & Texas Railroad Company had delivered the baggage in question to the defendant Terminal Railroad Association at its Union Station in St. Louis, Missouri, for safe-keeping and delivery to plaintiff, but which baggage, though due demand was made therefor by plaintiff, was never delivered.

On March 27, 1931, plaintiff and his wife were at the Rice Hotel in Houston, Texas. Plaintiff had purchased two tickets for transportation on the Missouri, Kansas & Texas Railroad from Houston, Texas, to St. Louis, Missouri. Plaintiff had the porter of the hotel come to his room and get his baggage and had him check the same to St. Louis. The hotel porter, when checking the baggage for transportation, signed plaintiff's name to a valuation receipt which stipulated that the "property covered by check #733822 is valued at not exceeding $100, and in case of loss or damage to such property, claim will not be made for a greater amount." When plaintiff left the hotel for the depot the porter gave him the railroad tickets and said baggage check of the Missouri, Kansas & Texas Railroad Company.

Plaintiff's baggage was carried by the Missouri, Kansas & Texas Railroad to St. Louis, Missouri, and arrived at the Union Station at ten o'clock on the evening of March 28, 1931. Upon arrival at the station the baggage was there turned over by the baggagemen of the train to a representative of the defendant Terminal, who gave the baggagemen a receipt for the same in the name of Dennis O'Toole, railroad baggage agent of the Terminal. Plaintiff went to claim his baggage at the Union Station on March 29, 1931, at about nine o'clock A. M. Defendant was not able to locate the baggage and it was never delivered to plaintiff.

At the first trial of the case before the court without the intervention of a jury a judgment was entered for plaintiff for the uncontroverted value of the baggage and its contents at the time of the loss, which was $849.

On the first appeal it appeared that at the trial of the case, upon objection by plaintiff, defendant was not permitted to introduce the tariffs pleaded in defendant's answer as having been filed with the Interstate Commerce Commission by the Missouri, Kansas & Texas Railroad Company, and that the court further had excluded testimony offered by defendant to prove the agency of the defendant in handling plaintiff's baggage for the Missouri, Kansas & Texas Railroad Company, and this court held that the action of the court in this regard was error prejudicial to the rights of defendant Terminal, and reversed the judgment and remanded the cause.

The case was retried in the circuit court upon the original pleadings, without the intervention of a jury, and judgment resulted for plaintiff for $100, and plaintiff in due course appealed. Plaintiff's evidence was the same as that offered at the first trial, and made out a *prima-facie* case. The baggage check issued to plaintiff for his baggage was introduced in evidence and bore the number 733822.

The evidence of the defendant Terminal, among other things, discloses that it is the owner of terminal facilities in St. Louis, Missouri, and East St. Louis, Illinois, and it is wholly owned by fifteen railroad companies which make use of its terminal facilities; that by contract

between it and the several proprietary railroad companies, each of these railroads has the right to joint use with each other proprietary company and with such other companies as may become proprietary lines, of all the terminal facilities of the defendant for passenger, freight, express and mail business, and in interchange of the same between each other and with the public. The Terminal is the owner of the union passenger station in the city of St. Louis, Missouri, and by agreement each of the fifteen proprietary lines entering the said city makes use of said union passenger station upon definite conditions alike to each of said railroads, upon a basis of rental and compensation which take care of all charges for which the said Terminal may in any manner whatsoever become liable in the operation, maintenance, repair, renewal, control, management, and conduct of the said station facilities. All the expenses in connection with the operation of the station are charged to one account and all revenue derived from the operation of the station, such as concessions, baggage storage, parcel rooms, and other revenue are in turn credited to this same account and the balance is the net cost of operating the station. Under the agreement the net cost of operating the Union Station is prorated monthly among the separate proprietary roads of the Terminal, based upon the per cent the number of cars which each railroad has brought in and taken out of the station bears to the whole number of cars taken in and out by all lines using the said facilities during such month. The effect of this agreement is that the Terminal neither sustains a loss nor makes a profit.

Under the provisions of the agreement for use of the Union Station, whatever payment the Terminal may be required to make to the plaintiff for the loss of his baggage in the instant case is an item chargeable as an expense of the operation of the Union Station.

Defendant's evidence showed that it did not file any schedule with the Interstate Commerce Commission covering its Union Station activities but that the Missouri, Kansas & Texas Railroad Company had filed its schedules of rates required by the Interstate Commerce Act and the Carmack Amendments to the Hepburn Act of June 29, 1906, chapter 3591, sections 584, 586, 593, as amended (49 U. S. C. A., secs. 6, 20 (11)), which included, as provided by said section 6, the limitation of the liability of the railroad as to passenger baggage, which was that baggage up to 150 pounds in weight and up to $100 in value may be checked without additional charge for each adult passenger; that unless a greater amount is declared by the passenger and charges paid for the excess baggage at the time of delivery to the carrier, the value of the baggage or property checked for a passenger shall be admitted and agreed to be not in excess of the amount of $100, and that the carrier issuing and transporting under this tariff shall not assume liability for a greater amount in case of loss or damage.

The defendant introduced in evidence the valuation receipt which was signed for plaintiff and which recited that the property "covered by check #733822 is valued at not exceeding $100, and in case of loss or damage to such property, claim will not be made for a greater amount."

The only contested issue raised here on this second appeal is one of law, namely, whether plaintiff's recovery for the loss of his baggage is limited to the declaration of value appearing in the valuation receipt and in the tariff schedule filed by the Missouri, Kansas & Texas Railroad Company, or whether the valuation receipt and the tariff schedule are inapplicable to the defendant and are available to it as a defense.

Our opinion on the first appeal, among other things, held that the contract of carriage of the passenger and his baggage was interstate and included holding of the passenger's baggage at the Union Station in St. Louis for a period of twenty-four hours after its arrival there; that since the loss of the baggage admittedly occurred prior to the lapse of twenty-four hours after its arrival at the Union Station in St. Louis—for plaintiff himself demanded the baggage prior to that time—the defendant Terminal, which handled plaintiff's baggage at the Union Station in St. Louis under its arrangement with the Missouri, Kansas & Texas Railroad Company, was entitled to the benefit of the contract of carriage which included the transportation of the baggage in question under the provisions of the Interstate Commerce Act, and such baggage tariffs, if any, which may have been included in the tariffs filed by the Missouri, Kansas & Texas Railroad Company with the Interstate Commerce Commission. It was in conformity with this ruling that the defendant in the second trial of the case was permitted to introduce the tariffs filed by the Missouri, Kansas & Texas Railroad Company with the Interstate Commerce Commission, which, as indicated above, limited the liability of the Missouri, Kansas & Texas Railroad Company for the baggage of an adult passenger to $100, and defendant again introduced the valuation receipt signed for plaintiff which set the value of his baggage at $100.

Incidental services, such as handling of baggage, as in this instance was done by the Terminal, are services which are not independently contracted for by plaintiff with the defendant, but are services which plaintiff was entitled to by reason of his contract of carriage with the Missouri, Kansas & Texas Railroad Company, and as such fall within the provisions of the Intestate Commerce Act and the Carmack Amendments to the Hepburn Act, *supra*. The Terminal, so far as these services are concerned, was the agent of the Missouri, Kansas & Texas Railroad Company in that defendant was completing a service which the initial carrier had taken upon itself to perform but which the Missouri, Kansas & Texas Railroad Company had employed the Terminal to do, and therefore the limitation of liability as to the value

of the baggage agreed to by plaintiff must be held to have been in effect.

It follows that the judgment below should be affirmed. It is so ordered. *McCullen, J.,* concurs; *Hughes, P. J.,* not sitting because not a member of the court at the time of the submission of the case.