Percy BROWN (Plaintiff), Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation (Defendant), Respondent.

No. 29606.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied March 5, 1957.

Hullverson & Richardson, James W. Jeans, St. Louis, for appellant.

John P. Montrey, Warner Fuller, Lyman J. Bishop, St. Louis, for respondent.

HOUSER, Commissioner.

Action for personal injuries by Percy Brown against Terminal Railroad Association of St. Louis. Plaintiff, holder of a pass entitling him to transportation on the lines of Wabash Railroad Company, used the pass on a personal business trip by Wabash passenger train from St. Louis, Missouri to Decatur, Illinois. He returned on Wabash Train No. 1, a regularly routed and scheduled daily train. While the Wabash train was running on the tracks of Terminal, after crossing the Mississippi River on its return to Missouri, plaintiff was injured when the Wabash train was struck by a Terminal switching engine negligently operated by a Terminal engineer, who failed to heed a stop signal. The pass, "good for transportation only over lines of Wabash Railroad," was accepted by plaintiff for use subject to the conditions printed thereon, which included a provision that

> "The user assumes all risk of death, injury, loss or damage to the user's person or property, whether due to negligence or otherwise, and neither the user nor any other person whosoever shall have any right or claim against the issuing company, its servants or agents, or any company or railway on whose lines or trains this pass may be honored, or its servants or agents, in respect or arising out of any such death, injury, loss or damage."

For the use of Terminal trackage, bridge and station facilities Wabash paid Terminal a charge, based upon actual cost of operation and maintenance, sufficient to produce enough revenue from Wabash and the fifteen other companies which own Ter-

minal to maintain the physical properties of the latter and to underwrite its funded debt. Terminal does not provide any commercial passenger service. The pass issued to plaintiff is not honored on any Terminal train.

After judgment of $4,000 for plaintiff the trial court granted Terminal's motion for judgment in accordance with its motion for a directed verdict, and plaintiff appealed.

The question is whether plaintiff's express assumption of risk and agreement to forego any claim against the agents of Wabash is broad enough to protect Terminal under the instant facts. It is not a narrow question of whether the engineer of the Terminal switching engine which collided with the Wabash train was an agent, servant and employee of Wabash, acting in the scope and course of employment by and under the control of Wabash at the very moment of the collision, or whether the arrangement between Wabash and Terminal created an independent contractor relationship or a principal and agent relationship under the rules of respondeat superior. We are construing the language of a pass, and not determining a question of respondeat superior. Our task is to determine whether the words "the issuing company, its servants or agents" are restricted to the train crew and direct employees of Wabash, or whether they include the employees of agencies and instrumentalities utilized by Wabash which contribute to the accomplishment of the carriage.

The quoted words are to be construed in the light of the surrounding circumstances, which necessarily comprehend the agreement between Wabash and Terminal with respect to the former's use of the latter's trackage, bridge and station facilities. Plaintiff must be held to have authorized Wabash to contract with Terminal for the use of the latter's facilities, and to have agreed that the provisions of the pass should protect Terminal to the same extent that they protect Wabash. The limi-

tation of liability provided for in the pass extends to all railroads and facilities contributing to the accomplishment of the transportation as to all risks taken by plaintiff as a passenger on any part of the whole journey. When plaintiff boarded the Wabash train at Decatur, Illinois to be carried to St. Louis, Missouri he must be held to have agreed to transportation by Wabash not only to the end of the Wabash tracks but also over and across Terminal tracks and bridges and into and upon Terminal stations and facilities and thus and thereby to his destination in exactly the same manner as if the tracks, bridges, etc., were the property of Wabash. Plaintiff undertook to be carried the whole way at his own risk, not only over Wabash tracks but also over the tracks of any agency or instrumentality of Wabash. The language of the pass is broad. It contains an unrestricted assumption of *all* risk of injury whether due to negligence or otherwise, coupled with an express agreement that the user of the pass shall have no right or claim arising out of any such injury against the issuing company, Wabash, its servants *or agents,* or any railway on whose lines or trains the pass may be honored, or *its* servants or agents. The parties intended the bearer of the pass to assume the risk of any injury sustained in the course of any transportation afforded by the use of the pass, and to eliminate any right or claim of the user of the pass for any injury occurring at any time during the carriage no matter whether that injury was sustained in the use of the facilities of Wabash, of any agency or instrumentality of Wabash, or of any line or train honoring a Wabash pass. The word "agents" as used in the pass must be regarded as synonymous with "agency" or "instrumentality." Compare Saunders v. Adams Express Co., 78 N.J.L. 441, 74 A. 670, where the word "agency" was read in the sense of the person, agent or instrumentality by which the work was done. And see 2 C.J.S., Agency, § 1a (2), p. 1024. It is immaterial that plaintiff was a passenger of Wabash and not

of Terminal at the time of injury. It is immaterial that plaintiff was riding in a Wabash and not in a Terminal coach. It is immaterial that that coach was pulled by a Wabash engine operated by a Wabash engineer, and not by a Terminal engine operated by a Terminal engineer. It is immaterial that the Terminal switching engine which caused the collision was not actually engaged in forwarding the movement of Wabash Train No. 1. The material and controlling fact is that at the time and place of injury the carriage of plaintiff was being contributed to by Terminal, an agency or instrumentality of Wabash which furnished the roadbed, tracks and rails upon which the train was running and the switching, signaling and station facilities by which the last part of the journey was to be accomplished. As such Terminal was an "agent" of the issuing carrier within the meaning of the language of the pass.

The concept of a terminal company as the *agent* of the various railroad companies which utilize its services is not new. In an action brought to dissolve Terminal as an unlawful combination in restraint of trade the Supreme Court of the United States in United States v. Terminal R. R. Ass'n of St. Louis, 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810, instead of dissolving the company permitted a modification of the agreement between Terminal and the proprietary lines so as to "constitute the former the bona fide *agent and servant of every railroad line which shall use its facilities* * * *." 32 S.Ct. 515, loc. cit. 516, 56 L.Ed. 819, loc. cit. 820. (Emphasis ours.) Under that decree a plan of reorganization was submitted and approved under which Terminal has since operated. See United States v. Terminal R. R. Ass'n of St. Louis, 236 U.S. 194, 35 S.Ct. 408, 59 L.Ed. 535. That Terminal is an *agent* for the furnishing of terminal facilities for its proprietary lines was recognized by this court in Dunn v. Alton R. Co., Mo.App., 88 S.W.2d 224, loc. cit. 226. In Treadway v. Terminal R. R. Ass'n of St. Louis, 231 Mo.App. 1028, 84 S.W.2d 143, we recognized that Terminal is the *agent* of one of the proprietary lines in the handling of passengers' baggage, and as such is entitled to the benefit of a limitation of liability in the carrier's baggage tariff. Becker, J., said, 84 S.W.2d loc. cit. 146: "Union terminals have been frequently before the courts for consideration, and have always been recognized and approved as legitimate agencies in the work of railroad transportation." In Southern Advance Bag & Paper Co. v. Terminal R. Ass'n of St. Louis, Mo.App., 171 S.W.2d 107, loc. cit. 111, Bennick, C., said:

> "The truth of the matter undoubtedly is that in transporting the car from East St. Louis to Cupples Station, the Terminal was simply engaged in the lawful transaction of its ordinary terminal business, which embraces the distribution of traffic for the carrier companies, and in the doing of which, under the system by which the unification of terminal facilities has been permitted in the St. Louis territory, *it acts in the capacity of agent in the completion of a service* which a line haul carrier would otherwise be expected to perform." (Emphasis ours.)

In Galveston Wharf Co. v. American Grocery Co., Tex.Civ.App., 13 S.W.2d 983, loc. cit. 989, it was held that in the performance of transfer, shifting or switching services terminal companies are acting in the capacity of the transfer *agent* of the company for which the service is performed. And see Floody v. Chicago, St. P., M. & O. Ry. Co., 109 Minn. 228, 123 N.W. 815.

The contractual exemption from or limitation of liability for injury to a passenger traveling on a pass has been extended beyond the issuing carrier to *connecting* carriers in these cases: Wilder v. Pennsylvania R. Co., 1927, 245 N.Y. 36, 156 N. E. 88, 52 A.L.R. 188; Hall v. North Eastern R. Co. (1875) LR 10, QB (Eng.) 437; Bicknell v. Grand Trunk R. Co. (1899) 26 Ont.App.Rep. 431. In Stevens v. Colom-

bian Mail S. S. Corp., D.C.N.Y.1936, 15 F.Supp. 534, the injured person was traveling on a pass which had been issued by an operating steamship company. In a suit against an allied company which owned the vessel it was held that the provision of the pass that the user assumed all risk of injury for negligence on the part of the operating company "or its agents or servants" provided an exemption not only for the issuing-operating company but also for the company which *owned* the vessel. In Evens v. Texas Pac.-Missouri Pac. Terminal R. R. of New Orleans, 5 Cir., 1943, 134 F.2d 275, a passenger of the issuing carrier was knocked down in the terminal station by a heavily loaded baggage cart pushed by a terminal company employee. By the provisions of the pass used by the passenger she assumed all risk of injury to her person. The parties did not question the fact that the terminal company was protected against ordinary negligence and "agreed that, by reason of her assumption of risk, appellant was entitled to recover only for injuries resulting from willful or wanton negligence of the terminal company." 134 F.2d loc. cit. 276. We find only one case in which the contractual exemption from liability has not been extended beyond the issuing carrier: Parker v. Bissonette, 203 S.C. 155, 26 S.E.2d 497, 498, 147 A.L.R. 773. In that case the pass provided that "the Atlantic Coast Line Railroad Company shall not be liable * * *." It did not in terms extend to the company's agents, servants, etc. Nor did the pass contain an assumption of risk of injury. The facts are so different that the decision has no bearing on the instant situation.

In entering judgment for defendant in accordance with defendant's motion for a directed verdict the circuit court properly ruled, and the Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.

ANDERSON, P. J., dissents.